(91 Misc. Rep. 382)

## In re TALBOT'S WILL.

(Surrogate's Court, Otsego County.　July 26, 1915.)

1. WILLS ⬤⟿55—TESTAMENTARY CAPACITY—EVIDENCE.

   In proceedings to probate a will, evidence *held* to show deceased had full testamentary capacity at the time of its execution.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. ⬤⟿55.]

2. WILLS ⬤⟿111—REQUISITES—SIGNING AT PHYSICAL END.

   A will must be signed at the physical end of the instrument to be valid.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec. Dig. ⬤⟿111.]

3. WILLS ⬤⟿111—REQUISITES—SIGNING AT END—DATING OF ATTESTATION CLAUSE.

   Where a will was signed, then followed an attestation ·clause, and just below it was written the place and date of execution by testator's attending physician, such will was properly signed at its physical end; the date below the attestation clause not necessarily being a part of the body of the will.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec. Dig. ⬤⟿111.]

Proceedings by Ulysses B. Talbot and another to probate the alleged last will and testament of Erie Talbot, deceased. Decree for proponent.

Ulysses G. Welch, of Edmeston, for proponent.
Arthur W. Morse, of New Berlin, for contestant.

BALDWIN, S. This is a proceeding for the probate of the alleged last will and testament of Erie Talbot, deceased. At the time of his death he was the owner of real and personal property of the value of about $3,500. He was about 80 years of age and considerably weakened by the natural infirmities of old age. He left one son, Ulysses B. Talbot, and one daughter, May P. Cole. The son was married, and his wife, Cora, is named in the will as one of the legatees. The will gives $500 to the surviving daughter, and the balance of the property is given to the son and the son's wife jointly, in such a manner that, in case of the death of one of the two, the survivor takes the whole. The deceased had apparently been disturbed toward the close of his life by the domestic troubles of his daughter. Her husband had committed suicide, and very promptly thereafter she had married a man named Cole, with whom she became acquainted in her husband's lifetime. This man, Cole, had had a former wife, who had secured a divorce from him, and the daughter and Cole apparently were obliged to leave the state to marry. From the record I am convinced that this marriage was distasteful to her father, and these surrounding circumstances doubtless had considerable to do with his determination not to divide his property equally.

[1] In his last illness the deceased made the will in question. It was prepared by his attending physician, who testified very strongly as to the testamentary capacity of the deceased at that time. This physician is a man of good standing in the community, and it was not disclosed that he had any possible interest in the controversy. The other witness to the will, L. J. Bixby, was entirely disinterested, and was in a position as a layman to judge intelligently as to the testamentary capacity of the deceased at the time. This witness expressed the opinion, without hesitation, that at this time the testator was of sound mind and memory and in all respects capable of making a will. The witness Campbell had had previous experience in the preparation of wills, and set forth in detail what took place at the time of its execution and publication. The witness Bixby appeared to be unable to remember all of the circumstances of the execution as well as the witness Campbell; but this might be regarded as natural, because he was not charged with any feeling of responsibility in regard to the preparation of the instrument and its due execution. I was convinced as to the truthfulness and sincerity of these witnesses, as well as their disinterestedness. Their testimony, together with the attestation clause, which latter is always to be considered, was sufficient to make a prima facie case for the admission of the will to probate.

The contestant, May P. Cole, then called as her only witnesses her two sons, their respective wives, and her second husband, Robert Cole. These witnesses testified to some weakness of mind on the part of the testator. Much of their testimony refers to the natural weaknesses attending old age, without necessarily affecting the testamentary capacity of the deceased. They gave some testimony indicating to my mind probable delirium, but their testimony as to dates was quite unsatisfactory. It appeared generally that when this condition was observed a Mrs. Dutton was working or staying there at the house, but toward the close of the case it was established that Mrs. Dutton did not go there until January 1st. The will in question was executed December 15, 1914, at which time it had not then become necessary to give any quieting medicine to the testator, as testified to by the attending physician. The decline of the old gentleman after the execution of the will was quite marked, and toward the latter part of the month of December it became necessary to give opiates, which might have accounted for the delirium, as testified to by the members of the family of the contestant. Such a condition of delirium was shown not to exist at the time of the execution of the will, and there was no proof whatever that the deceased was laboring under any delusion at that time. None of contestant's witnesses testified that they were impressed that the acts and conversations of the deceased, as testified to by them, were irrational. The witnesses for the contestant must be regarded as interested ones.

At the close of the testimony in behalf of the contestant, I was inclined to think that the contestant had not introduced sufficient evidence to cast the burden again upon the proponents. Nevertheless, the proponents then called six witnesses, who were entirely disinterested, and whose testimony carried much weight. They stated the

facts and conversations had with the deceased at about the same time of the making of the will, and these witnesses detailed such conversations, and stated that the conversations and acts of the decedent, as testified to by them, impressed them as rational.

Taking the record as a whole, I am convinced that the deceased had full testamentary capacity at the time of the execution of the will in question. I am unable to hold from the evidence that any undue influence was practiced upon the deceased to bring about the making of the will in question. The question of undue influence cannot rest upon surmises of what might have been done or what might have taken place. Proof must be submitted upon which the court can act and determine. I fail to find in the record any such proof. It is true that there appeared to be considerable feeling between the son and the daughter, or more particularly between the son's wife and the daughter. This feeling was more marked against the husband of the daughter, who had seemed to take an important part in bringing about this distressing situation near the close of the life of the aged testator.

[2, 3] There is one other question very strongly urged by the contestant, and that is the claim that the testator did not sign his name at the physical end of the instrument. There was no date inserted at the beginning of the will, nor in the body of it, and there is no date above the signature of the testator. At the close of the attestation clause, or just below it, and opposite the signatures of the witnesses, the scrivener, who was not a lawyer, but the attending physician, inserted these words: "Burlington, N. Y., December 15, 1914." There is no law which requires a will to be dated; neither is an attestation clause required to be dated. It is just as important, and perhaps more so, for the attestation clause to be dated, as it is for the body of the will to bear date. In the will in question the disposing provisions are not conditioned in any manner by the date written at the end of the attestation clause. The scrivener may have believed it as important with reference to the acts of the witnesses in signing the will to allow the attestation clause to show the date that they performed their important service.

It must be recognized as established by the courts in this state that a will must be signed at the physical end of the instrument in order to make a valid will; but I look upon the will in question as having been properly signed by the testator at its physical end, and must decline to go below the attestation clause, and there seek the date, and say that such date must necessarily be treated as a part of the body of the will. To my mind, such a suggestion is too far-fetched to be considered as interfering with the legality of a will proven to have been properly executed by a competent testator, free from restraint at the time of its execution.

The will should be admitted to probate, and a decree may be entered accordingly.